**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB,** *as Trustee of Finance of America Structured Securities Acquisition Trust 2019-HB1*, <br><br>*Plaintiff*,<br><br>v.<br><br>**ELIZABETH MEYER, STEFAN MEYER, MATTHEW MEYER, EMILY MEYER, and LACY MEYER,**<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § §    EP-23-CV-00078-DCG |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the "Motion for Final Default Judgment and Brief in Support Thereof" ("Motion"), filed by Plaintiff Wilmington Savings Fund Society, FSB, as Trustee of Finance of America Structured Securities Acquisition Trust 2019-HB1. (ECF No. 11.) On April 13, 2023, the Honorable Senior U.S. District Judge David Guaderrama referred the Motion to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Appendix C to the Local Rules. (ECF No. 13.) For the following reasons, the Court recommends **GRANTING** the Motion.

### I. FACTUAL BACKGROUND

This case concerns "the real property and improvements commonly known as 300 Inverness Drive, Horizon City, Texas 79928" ("Property") and the alleged failure of Defendants

1

Elizabeth Meyer, Stefan Meyer, Matthew Meyer, Emily Meyer, and Lacy Meyer (collectively, "Defendants") to cure default after failing to pay taxes on the Property. (ECF No. 1:2, 6–7.)[1]

According to Plaintiff's Complaint, on or about August 21, 2015, Decedent William Meyer (or "Decedent") and Defendant Elizabeth Meyer (collectively, "Borrowers") executed an "Adjustable-Rate Note (Home Equity Conversion)" ("Note") in the principal sum of $450,000 with an interest rate of 3.654% per annum, originally payable to Urban Financial of America, LLC ("Urban"). (*Id.* at 4–5); *see* (ECF No. 1-1:1–10) (attaching, as Exhibit A, a copy of the Note). Concurrently, the Borrowers executed, as grantor, an "Adjustable Rate Home Equity Conversion Deed of Trust" ("Security Instrument") (collectively with the Note, "Loan Agreement"), granting Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Urban, its successors and assigns, a security interest in the Property. (ECF No. 1:5); *see* (ECF No. 1-1:11–29) (attaching, as Exhibit B, a copy of the Security Instrument as recorded in the Official Public Records of Real Property in El Paso County).

In 2017, MERS, as nominee for Urban, transferred and assigned the Loan Agreement to Finance of America Reverse, LLC f/k/a Urban Financial of America LLC f/k/a Urban Financial Group, Inc ("2017 Assignment"). (ECF No. 1:5); *see* (ECF No. 1-1:30–32) (attaching, as Exhibit C, a copy of the 2017 Assignment as recorded in the Official Public Records of Real Property in El Paso County). In 2018, the Loan Agreement was transferred and assigned to Finance of America Structured Securities Acquisition Trust 2017-HB1, Wilmington Savings Fund Society, FSB, not individually but solely as trustee ("2018 Assignment"). (ECF No. 1:5); *see* (ECF No. 1-

---

[1] The Property is more particularly described as:

> LOT 13, BLOCK 4, EMERALD SPRINGS RETREAT, AN ADDITION TO EL PASO COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 80, PAGE 84, 84A AND 84B, PLAT RECORDS OF EL PASO COUNTY, TEXAS.

(ECF No. 1:2–3.)

1:33–35) (attaching, as Exhibit D, a copy of the 2018 Assignment as recorded in the Official Public Records of Real Property in El Paso County). Then, in 2019, the Loan Agreement was transferred and assigned to Plaintiff ("2019 Assignment"). (ECF No. 1:5–6); *see* (ECF No. 1-1:36–39) (attaching, as Exhibit E, a copy of the 2019 Assignment as recorded in the Official Public Records of Real Property in El Paso County). "Plaintiff is the current holder of the Note, endorsed in blank, and beneficiary of the Security Instrument," and is also a mortgagee of the Loan Agreement. (ECF No. 1:6) (citing Texas Property Code § 51.0001(4) for the definition of "mortgagee"); *see also* (ECF No. 1-1:2, 21) (defining "lender" as Urban "and its successors and assigns," and "any holder of the Note who is entitled to receive payments under the Note").

The Loan Agreement requires, in relevant part, that the Borrowers pay taxes on the Property. (ECF No. 1:6.) Should they fail to do so, "the lender may require immediate payment in full of all outstanding principal and accrued interest owed on the Note." (*Id.*) "The Loan Agreement further provides that the lender may enforce the Security Instrument by selling the Property" in accordance with the law and the terms of the Loan Agreement. (*Id.*)

On or about October 6, 2016, Decedent passed away. (*Id.*) No probate was opened for him. (*Id.*) "In accordance with Texas Estates Code §§ 101.001(b) and 101.051, his heirs acquired all of his interest in the Property immediately upon his death—subject to the Loan Agreement debt owed to Plaintiff." (*Id.*) "Each Heir is made a party in this proceeding," including Defendant Elizabeth Meyer, "an obligor and mortgagor" under the Loan Agreement. (*Id.* at 2.)

Plaintiff alleges that "Defendants have failed or refused to pay the outstanding balance of taxes on the Property." (*Id.* at 6.) A "Notice of Default and Intent to Accelerate" ("NOD") "was served in accordance with the Loan Agreement and the Texas Property Code." (*Id.* at 6–7); *see* (ECF No. 1-1:40–46) (attaching, as Exhibit F, copies of the NOD, indicating that it was sent by

first class mail on or about February 13, 2020, to Decedent and Defendant Elizabeth Meyer at the Property's address). "The default was not cured, and the maturity of the debt was accelerated." (ECF No. 1:7.) On August 19, 2021, a "Notice of Acceleration of Loan Maturity" ("NOA") was sent to Decedent and his heirs at the Property's address. (*Id.*); *see* (ECF No. 1-1:47–61) (attaching, as Exhibit G, copies of the NOA, indicating that the NOA was mailed first class to Decedent, Defendants, and "the unknown heirs of William Meyer" at the Property's address).

## II.   PROCEDURAL HISTORY

On February 22, 2023, Plaintiff filed its Original Complaint, seeking relief for Defendants' breach of the Loan Agreement. (ECF No. 1:7–9); *see also* (ECF No. 1-2:1). Plaintiff asks the Court to declare that:

(1) Plaintiff "is the owner and holder of the Note and beneficiary of the Security Instrument"; and

(2) As such, Plaintiff is a mortgagee pursuant to Texas Property Code § 51.0001(4), such that Plaintiff is "authorized to enforce the power of sale in the Security Instrument through foreclosure of the Property."

(ECF No. 1:7.) Plaintiff then asks for either an order authorizing non-judicial foreclosure or, alternatively, a judgment for judicial foreclosure. (*Id.* at 7–8.)[2] Finally, Plaintiff requests attorney's fees and court costs. (*Id.* at 8–9.)

Upon Plaintiff's request, the Clerk of the Court issued summonses for Defendants. (ECF Nos. 3–4.) Plaintiff then filed proof of executed summonses, which indicated that:

(1) On February 28, 2023, Defendant Lacy Meyer was personally served at 12751 E. Kentucky Place, Aurora, CO 80012 (ECF No. 6);

(2) On March 2, 2023, Defendant Matthew Meyer was personally served at 10815 Troy Street, Commerce City, CO 80022 (ECF No. 5);

(3) On March 3, 2023, Defendant Stefan Meyer was personally served at 3021 Marigold Drive, Fairfield, CA 94533 (ECF No. 9);

---

[2] In its Motion, Plaintiff only requests declaratory judgment for non-judicial foreclosure. (ECF No. 11:6.)

(4) On March 6, 2023, Defendant Emily Meyer was personally served at 300 Inverness Drive, Horizon City, Texas 79928 (ECF No. 8); and

(5) On March 6, 2023, Defendant Elizabeth Meyer was served by delivery of the summons and Complaint to Emily Meyer at 300 Inverness Drive, Horizon City, TX 79928 (ECF No. 7).

Each Defendant had twenty-one days from service to answer. Fed. R. Civ. P. 12(a)(1)(A)(i). On March 28, 2023, after each Defendant failed to timely answer or otherwise appear, Plaintiff requested entry of default against Defendants (ECF No. 10) and filed the instant Motion for Final Default Judgment and Brief in Support Thereof (ECF No. 11). On April 12, 2023, the Clerk of the Court entered default against Defendants. (ECF No. 12.) On April 13, 2023, Judge Guaderrama referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 13.) Defendants have not responded to the Motion or otherwise appeared in this matter.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 55 ("Rule 55") governs entry of default and default judgment. In ruling on a motion for default judgment, courts generally follow a three-part analysis: (1) procedural propriety of default judgment, (2) substantive merits of the request for default judgment, and (3) appropriate form of relief. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813–14 (N.D. Tex. 2015).

Procedurally, a defendant defaults if he or she fails to timely respond to the complaint. Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the plaintiff may seek an entry of default judgment. Fed.

R. Civ. P. 55(b).  Default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted).  In deciding whether default judgment is procedurally proper, the court considers the following factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("*Lindsey* factors").

Next, as to the merits of a motion for default judgment, the court accepts the plaintiff's well-pled allegations as true, except regarding damages.  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).  Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment.  *Nishimatsu*, 515 F.2d at 1206.  In other words, "a defendant's default does not in itself warrant the court in entering a default judgment. . . .  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Id.*  Courts apply the Federal Rule of Civil Procedure 8 standard for the sufficient basis inquiry.  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context.").

Finally, as to appropriate form of relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The court may conduct a hearing on a default judgment motion, as needed, to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D)

investigate any other matter." Fed. R. Civ. P. 55(b)(2). A hearing on damages is required "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## IV. ANALYSIS

### A. Jurisdiction and Venue

The Court first confirms that it has jurisdiction to hear this matter. *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[A] district court has the duty to assure that it has the power to enter a valid default judgment."). First, the Court has subject matter jurisdiction over this matter by way of diversity jurisdiction. *See* 28 U.S.C. § 1332(a) (providing original jurisdiction to district courts where the amount in controversy exceeds $75,000 and is between citizens of different States). Plaintiff alleges, and Defendants do not dispute, that the amount in controversy consists of the Property's value, which is $332,993. (ECF No. 1:4) (citing, e.g., *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam)). Additionally, Plaintiff alleges, and Defendants do not dispute, that there is diversity of citizenship between Plaintiff and Defendants. Plaintiff, as a trustee and as a national banking association, is effectively a citizen of Delaware. (*Id.* at 3) (citing 28 U.S.C. § 1348 and *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006)); *see Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465–66 (1980) (holding that citizenship of trustees, rather than beneficiaries of the trust, can be considered for purposes of diversity jurisdiction). Defendants Elizabeth Meyer and Emily Meyer are citizens of Texas, Defendant Stefan Meyer is a citizen of California, and Defendants Matthew Meyer and Lacy Meyer are citizens of Colorado. (ECF No. 1:3.)

Each Defendant was properly served,[3] but since some Defendants do not reside in Texas, the Court confirms that it has in rem jurisdiction.[4] Plaintiff's claims for declaratory judgment and foreclosure implicate rights to the Property. (*Id.* at 7–9); *Davidson v. F.D.I.C.*, 44 F.3d 246, 249 n.2 (5th Cir. 1995) ("[T]he foreclosure remedy is in rem, not in personam, and is therefore limited to the property itself."). Additionally, Plaintiff frames its request for attorney's fees "not . . . as a personal judgment against the Defendants but only as an additional debt secured by the Deed of Trust." (ECF No. 1:8.) Similarly, in its Motion, Plaintiff requests that court costs be declared "secured by the Security Instrument." (ECF No. 11:6); *see In re Erickson*, No. 09-11933, 2012 WL 4434740, at *13 (W.D. Tex. Sept. 24, 2012), *aff'd*, 566 F. App'x 281 (5th Cir. 2014) (distinguishing the recovery of fees and costs against property rather than the person). In other words, this case strictly concerns claims to the Property, and thus, the Property's situs within Texas is sufficient to establish in rem jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 207–08 (1977) ("[T]he presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant[,] and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." (footnote omitted)); *see, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Navarro*, No. 5:18-CV-109, 2020 WL 7658069, at *4 (S.D. Tex. Oct. 26, 2020) (distinguishing, on similar facts, that "this judgment

---

[3] Defendants Matthew Meyer, Lacy Meyer, Emily Meyer, and Stefan Meyer were each personally served. (ECF Nos. 5–6, 8–9); *see* Fed. R. Civ. P. 4(e)(2)(A). Defendant Elizabeth Meyer was served by leaving a copy of the summons and Complaint with Emily Meyer, a person of suitable age and discretion, at the Property, where both Elizabeth Meyer and Emily Meyer live. (ECF No. 7); *see* (ECF No. 11-1:2–3); Fed. R. Civ. P. 4(e)(2)(B).

[4] *See Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958) ("A judgment in rem affects the interests of all persons in designated property. A judgment quasi in rem affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him.").

serves as a final in rem Judgment and not a personal judgment against Defendants"); *U.S. Bank Nat'l Ass'n v. Robinson*, No. 3:17-CV-2586-G, 2018 WL 3406931, at *2–3 (N.D. Tex. June 15, 2018), *report and recommendation adopted*, No. 3:17-CV-2586-G (BH), 2018 WL 3392176 (N.D. Tex. July 10, 2018) (collecting similar cases to indicate that they are in rem, not in personam).

In sum, the Court has jurisdiction to hear this matter. Further, venue is proper because "this suit concerns title to real property located in El Paso County, Texas." (ECF No. 1:4) (citing 28 U.S.C. § 1391(b)(2)).

### B. Applicable Law

The Court applies Texas substantive law and federal procedural law in this case. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."); *see also* (ECF No. 1-1:20) (Security Instrument electing governability under "Federal law and the law of the jurisdiction in which the Property is located").

### C. Default Judgment

#### 1. Procedural Propriety

Default judgment against Defendants is procedurally appropriate. As discussed, Defendants defaulted after failing to timely respond to the Complaint. (ECF Nos. 5–9); Fed. R. Civ. P. 12(a)(1)(A)(i); *see Brown*, 84 F.3d at 141. Upon Plaintiff's request (ECF No. 10), the Clerk of the Court entered default against Defendants on April 12, 2023 (ECF No. 12). *See* Fed. R. Civ. P. 55(a). Plaintiff verified that "Defendants are not in active-duty military status." (ECF No. 11:2) (citing ECF No. 11-1:5–15). Accordingly, the grounds for default are clearly established. *See Lindsey*, 161 F.3d at 893. The other *Lindsey* factors also weigh in support of default judgment. There is nothing in the record or procedural history to suggest good faith

mistake, excusable neglect, that any material facts are at issue, or that a motion from Defendants would oblige the Court to set aside the default. *See id.* Plaintiff would be substantially prejudiced if default judgment were denied. *See id.*; *e.g.*, *Wilmington Sav. Fund Soc'y, FSB as Tr. of Aero Mortg. Loan Tr. 2017-1 v. Salyer*, No. 1:19-CV-942-RP, 2020 WL 2110820, at *2 (W.D. Tex. May 4, 2020) (finding in a similar case that plaintiff "incurred legal fees to seek an order allowing foreclosure" and thus would be "substantially prejudiced if its request for default judgment is denied"); *St. Paul Fire & Marine Ins. Co. v. Flexrod Sales & Servs., Inc.*, No. MO-16-CV-00085-DCG, 2016 WL 11554108, at *2 (W.D. Tex. Dec. 13, 2016) (finding that defendant's failure to respond to plaintiff's complaint "result[ed] in prejudice to [p]laintiff's interests by bringing the adversary process to a halt"). The Court recognizes that default judgment may be harsh for Defendants Elizabeth Meyer and Emily Meyer because they live at the Property. *See Lindsey*, 161 F.3d at 893; (ECF Nos. 7–8; 11-1:2–3). However, as another court observed in a similar case, "there is likely no alternative that both avoids this harsh effect and permits plaintiff to fully exercise its rights." *Wells Fargo Bank v. Gardner*, No. 6:19-cv-00483, 2020 WL 13561580, at *2 (E.D. Tex. Jan. 24, 2020). For these reasons, default judgment is procedurally appropriate.

### 2. Merits

As a preliminary matter, it is unclear whether Plaintiff intended to base its Complaint on a breach of contract claim and/or a foreclosure claim. *See* (ECF Nos. 1, 1-2.) Some courts treat breach of contract claims as "subsumed" in foreclosure claims, under the theory that foreclosure is a remedy rather than a cause of action. *See, e.g.*, *Ocwen Loan Servicing, LLC v. Kingman Holdings, LLC*, No. 3:18-cv-1197-S, 2019 WL 3802167, at *5–6 (N.D. Tex. May 31, 2019) (collecting cases). The Fifth Circuit has characterized foreclosure as a "contractual remedy." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 994–95 (5th Cir. 2019) ("[W]e highlight

10

that the foreclosure remedy would only be available if [the requesting party] shows that it complied with contractual requirements."). But the Fifth Circuit has also acknowledged foreclosure as an independent cause of action under Texas law. *See Priester v. Deutsche Bank Nat'l Tr. Co.*, 832 F. App'x 240, 248 (5th Cir. 2020) (treating foreclosure as an independent cause of action under Texas Civil Practice and Remedies Code § 16.035); *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 203 (5th Cir. 2018) (same); *Davidson v. F.D.I.C.*, 44 F.3d 246, 248 (5th Cir. 1995) (same).[5] This Court construes the Complaint as stating both breach of contract and foreclosure as causes of action. *See* (ECF No. 1:7–8) (listing non-judicial foreclosure as a cause of action based on a "material breach of the Loan Agreement" and, in the alternative, judicial foreclosure "for failure to cure the default of the Loan Agreement"); (*id.* at 8) (seeking attorney's fees under Texas Civil Practice and Remedies Code § 38.001, which covers contract claims); (ECF No. 1-2:1) (describing the cause of action as breach of contract).

Below, the Court will first consider the merits of Plaintiff's breach of contract claim, followed by the merits of the foreclosure claim. Then, in Section IV.C.3, the Court will assess declaratory judgment, non-judicial foreclosure, attorney's fees, and court costs as potential remedies. *See* (ECF No. 1:7–9); *Texas v. Ysleta del Sur Pueblo*, 367 F. Supp. 3d 596, 602 (W.D. Tex. 2019) (collecting cases holding that "[t]he Declaratory Judgment Act provides no independent cause of action").

As mentioned, by defaulting, Defendants admit the well-pled factual allegations in the Complaint. *Nishimatsu*, 515 F.2d at 1206. To determine whether facts are well-pled such that a sufficient basis for default judgment exists, courts consider whether the Complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and "raise[s] a

---

[5] Texas Civil Practice and Remedies Code § 16.035(a) pertains to judicial foreclosures, while § 16.035(b) pertains to non-judicial foreclosures. *See Pogue v. Williamson*, 605 S.W.3d 656, 670 (Tex. App. 2020).

11

right to relief above the speculative level." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see* Fed. R. Civ. P. 8(a).

### i. Breach of Contract

Plaintiff sufficiently pleads the elements of a breach of contract claim: "(1) a valid contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages." *Wease*, 915 F.3d at 993 (citing *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 969 (Tex. App. 2013)).

First, Plaintiff asserts the existence of a valid contract between Plaintiff, Decedent, and Defendant Elizabeth Meyer.[6] As discussed in Section I *supra*, on or about August 21, 2015, Decedent and Defendant Elizabeth Meyer executed "for value received" the Note payable to Urban. (ECF No. 1:4–5.) Decedent and Defendant Elizabeth Meyer also executed the Security Instrument, granting MERS as nominee for Urban a security interest in the Property. (*Id.* at 5.) After a series of transfers and assignments, Plaintiff is now a party to the Loan Agreement as "the current holder of the Note, endorsed in blank, and beneficiary of the Security Instrument." (*Id.* at 5–6.) Plaintiff attached copies of the relevant signed documents to the Complaint. *See* (ECF No. 1-1:1–10) (Note); (*id.* at 11–29) (Security Instrument); (*id.* at 30–32) (2017 Assignment); (*id.* at 33–35) (2018 Assignment); (*id.* at 36–39) (2019 Assignment, indicating that the assignment and transfer to Plaintiff was done "for value received"); *see also Nishimatsu*, 515 F.2d at 1206 (holding that attachments to a complaint are "part of the pleadings for all purposes"). For these reasons, Plaintiff has sufficiently pled the existence of a valid contract. *See, e.g.*, *TEU Servs., Inc. v. Inventronics USA, Inc.*, No. SA-16-CV-01023-RCL, 2018 WL 3338217, at *6 (W.D. Tex. Feb. 5, 2018) (stating that a sufficient pleading can be made by attaching the contract or by describing the

---

[6] "A valid contract in Texas requires (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) meeting of the minds; (4) each party's consent to the terms; (5) the contract to be executed and delivered with intent that it be mutual and binding; and (6) consideration." *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 552 (5th Cir. 2012) (citing *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 670 (Tex. App. 2010)).

"material terms," i.e., "the parties to the contract, the nature of the contract, the subject of the contract, and the consideration for the contract"); *Deutsche Bank Nat'l Tr. Co. as Tr. for Agent Securitird Inc. Asset-Backed Pass-through Certificates, Series 2006 W-5 v. McGowen*, No. 1:16-CV-273-DAE, 2019 WL 13150083, at *4 (W.D. Tex. Oct. 30, 2019) (describing a note as sufficient evidence of a valid contract).

For the second and third elements, Plaintiff asserts that it performed on the Loan Agreement by, e.g., serving an NOD on Defendant Elizabeth Meyer and Decedent, after they breached the Loan Agreement by failing to pay taxes on the Property. (ECF No. 1-1:5, 13–17, 20–21) (Note and Security Instrument reflecting the Borrowers' duty to pay taxes on the Property and Plaintiff's duty as the "lender" to notify the Borrowers of default and provide thirty days after notice to cure the default); (*id.* at 42, 45) (NOD, dated February 13, 2020, and reflecting a total balance due of $187,880.30); (*id.* at 47–61) (NOA, dated August 19, 2021, and indicating failure to cure default). Plaintiff has sufficiently pled its performance and the Borrowers' breach of the Loan Agreement. *See, e.g.*, *Kingman Holdings*, 2019 WL 3802167, at *6–7.

Finally, Plaintiff has sufficiently pled that it suffered damage from the breach. Specifically, "if Plaintiff is unable to foreclose, it may be entirely divested of any interest in the Property," which is appraised at $332,993. (ECF No. 1:4); *see, e.g.*, *Bank of New York Mellon as Tr. of Registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5 v. Riley*, No. 21-40383, 2022 WL 1773364, at *3 (5th Cir. June 1, 2022).

Based on Plaintiff's well-pled facts, default judgment on Plaintiff's breach of contract claim is warranted.

### ii. Foreclosure

Plaintiff also sufficiently pleads the foreclosure elements.

> To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) [borrowers] are in default under the note and security instrument; and (4) [borrowers] received notice of default and acceleration.

*Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014).

First, Plaintiff asserts that a debt exists in the form of Defendants' unpaid taxes on the Property. (ECF No. 1:6); *see also* (ECF No. 1-1:42, 45) (attached NOD indicating a total balance due of $187,880.30). Second, Plaintiff demonstrates that the debt is secured by the Security Instrument, a lien for a home equity loan. *See* (ECF Nos. 1:6; 1-1:3, 11–29); *e.g.*, *Huston*, 988 F. Supp. 2d at 740–41 (explaining that a security instrument for a home equity loan meets the second prong); *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2–3 (W.D. Tex. Feb. 14, 2017) (same).[7] Third, Plaintiff pleads that the Borrowers are in default. (ECF No. 1:6–7); *see* (ECF No. 1-1:42, 45) (attached NOD explaining that the Borrowers had to pay $35,526.52 to cure the default). Finally, Plaintiff demonstrates that the Borrowers received notice of default and acceleration. (ECF Nos. 1:6–7; 1-1:40–61.)[8]

Based on Plaintiff's well-pled facts, default judgment on Plaintiff's foreclosure claim is warranted.

---

[7] The Security Instrument cites Article 16, Section 50(a)(7) of the Texas Constitution, instead of Section 50(a)(6). (ECF No. 1-1:22, 24.) However, this alone does not mean that Plaintiff fails to meet the second foreclosure prong, given the Security Instrument's language as a whole and its execution.

[8] Only the Borrowers received the NOD, but all Defendants received the NOA. *See* (ECF No. 1-1:40–61.) This is sufficient notice. *Wells Fargo Bank N.A. v. Anthony*, No. 3:20-CV-0125-K, 2020 WL 3574690, at *2 (N.D. Tex. June 30, 2020).

### 3. Forms of Relief

Plaintiff seeks declaratory judgment, an order authorizing non-judicial foreclosure, attorney's fees, court costs, and "[a]ny other relief to which the Court deems Plaintiff is entitled." (ECF No. 11:6.)

#### i. Declaratory Judgment

Plaintiff does not clarify whether it seeks declaratory judgment under federal or state law, though it references the Texas Declaratory Judgment Act—Texas Civil Practice and Remedies Code Chapter 37—regarding attorney's fees. (*Id.* at 5.) The Court applies the federal Declaratory Judgment Act because, generally, the Texas Declaratory Judgment Act "is a procedural rule that does not apply to a federal court sitting in diversity." *Santiago v. BAC Home Loans Servicing, L.P.*, 20 F. Supp. 3d 585, 593 (W.D. Tex. 2014) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).[9]

Under the federal Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration" in a case that is an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. An actual controversy is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

---

[9] In some circumstances that are inapplicable here, the Court might apply the Texas Declaratory Judgment Act, e.g., for questions of improper joinder. *Boy Scouts of Am. v. Hartford Accident & Indem. Co.*, 443 F. Supp. 3d 753, 760 n.3 (N.D. Tex. 2020).

As is apparent from the preceding analysis, this case presents an actual controversy that is within this Court's jurisdiction. In its Motion, Plaintiff specifies its requests for judgment declaring that:

(1) "Plaintiff is the owner and holder of the Note with standing to enforce the Security Instrument"; and

(2) The Security Instrument secures the outstanding balance of the Note, pre-judgment interest, post-judgment interest from the date of judgment until paid, and costs of court.

(ECF No. 11:6.)

As discussed, Plaintiff has shown that it has standing to enforce the Security Instrument as the owner and holder of the Note as of the most recent transfer and assignment. (ECF Nos. 1:5–6; 1-1:36–39.) Plaintiff has also shown that the outstanding balance of the Note, pre-judgment interest, post-judgment interest from the date of judgment until paid, and court costs are secured by the Security Instrument. *See* (ECF Nos. 1:6; 1-1:3–7, 12–13, 21–22.) Accordingly, the Court finds such declaratory judgment appropriate.

### ii. Non-Judicial Foreclosure

Plaintiff seeks an order authorizing Plaintiff and its successors and assigns to proceed with non-judicial foreclosure of the Property pursuant to the Security Instrument and the Texas Property Code. (ECF No. 1:7.) Plaintiff has demonstrated that it is entitled to a non-judicial foreclosure. *See supra* Section IV.C.2.ii. Plaintiff states that, as provided in Texas Property Code § 51.002,[10] "[a] public auction of the Property in conjunction with all other regularly scheduled non-judicial foreclosure sales on the first Tuesday of the month would provide the most practical, efficient, and effective means to enforce Plaintiff's security interest in the Property" and "would meet all

---

[10] For *Erie* purposes, Texas Property Code § 51.002 is substantive, not procedural. *See Goff v. HSBC Bank USA*, No. EP-13-CV-265-KC, 2013 WL 5923652, at *3 n.1 (W.D. Tex. Oct. 30, 2013).

constitutional standards of due process." (ECF No. 1:7–8.) The Court finds it appropriate to authorize such non-judicial disclosure.

### iii. Attorney's Fees and Court Costs

Plaintiff also asks for court costs, and "reasonable and necessary attorney's fees" under Texas Civil Practice and Remedies Code Chapters 37 and 38 and the terms of the Loan Agreement. (ECF No. 11:5–6). As explained, the Texas Declaratory Judgment Act is inapplicable here because it is procedural rather than substantive. Thus, Plaintiff is not entitled to attorney's fees under Texas Civil Practice and Remedies Chapter 37. *Nautilus Ins. Co. v. Nicky & Claire's Day Care, Inc.*, 630 F. Supp. 2d 727, 740 (W.D. Tex. 2009). However, Plaintiff is entitled to attorney's fees as a remedy for its breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(b)(8); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."); *see* (ECF No. 1-1:6, 21–22). Plaintiff is entitled to such fees and court costs in an amount to be assessed upon separate motion at a later time. The Court does not recommend any other relief.[11]

## V. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Final Default Judgment and Brief in Support Thereof (ECF No. 11) be **GRANTED** as outlined in the proposed Final Default Judgment (ECF No. 11-2).

---

[11] A hearing on the Motion is unnecessary because there is no need for an accounting, calculation of damages, or investigation into the truth of allegations or any other matter. Fed. R. Civ. P. 55(b)(2).

**SIGNED** this 7th day of August, 2023.

_____
**ROBERT F. CASTAÑEDA
UNITED STATES MAGISTRATE JUDGE**

### **NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**